IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief March 1, 2005

## ROBERT GAMBLE v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-24725     W. Fred Axley, Judge**

---

**No. W2004-00977-CCA-R3-PC  - Filed June 23, 2005**

---

Following a jury trial, Petitioner, Robert Gamble, was convicted of two counts of aggravated robbery, one count of fraudulent use of a credit card, and one count of theft of property over five-hundred dollars. Petitioner's conviction and sentence were affirmed by this Court on direct appeal, and Petitioner's Rule 11 application was denied by the Supreme Court. Petitioner filed a petition for post-conviction relief, which was subsequently amended. Following a hearing, the post-conviction court dismissed Petitioner's amended petition for post-conviction relief. In this appeal, Petitioner argues that the court erred when it dismissed his petition for post-conviction relief because he received ineffective assistance of counsel at his trial. After a thorough review of the record, we find that the lower court properly dismissed the petition. As such, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and J.C. MCLIN, JJ., joined.

Joshua B. Spickler, Memphis, Tennessee, for the appellant, Robert Gamble.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; William L. Gibbons, District Attorney General; Tracye Jones, Assistant District Attorney General; and Eric Christensen, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

On January 10, 1997, two masked men entered a Union Planters Bank in Memphis with guns. One of the men jumped onto the teller line counter and told bank employees to get on the floor. The other man held the desk-side officials on the floor, while the first rifled through the teller drawers. After the men left, they dropped a bag containing the stolen money outside the bank when a "dye

pack" exploded inside the bag. A dye pack is a fake stack of money that releases red dye when transported through the bank door. The masked men also stole a purse belonging to one of the tellers, Marpu Moulton. Moulton's ATM card was used five times the day it was stolen and $554 was taken from her account. ATM surveillance cameras captured Petitioner on film as he was using Moulton's ATM card on the day of the robbery.

Following a jury trial, Petitioner was convicted of two counts of aggravated robbery, one count of fraudulent use of a credit card, and one count of theft of property over five-hundred dollars, and sentenced to an effective sentence of sixty-six years. On direct appeal, this Court summarized the evidence presented at trial linking Petitioner to the robbery:

> Not only was the [Petitioner] captured on film using Moulton's stolen ATM card, but he admitted to police that he used the card following the robbery. In addition, police found the "getaway" car, which was identified by an eyewitness to the crime, in a parking lot near one of the [Petitioner]'s residences, and police found footprints leading from the car toward the [Petitioner]'s home. From the [Petitioner]'s two residences, police recovered a pair of gloves, one of which was stained with red dye like that used in the bank's "dye packs"; a necklace which appeared to be the same necklace worn by the suspect who used the stolen ATM card after the robbery; a baseball cap like that worn by the suspect; a flannel shirt like that worn by one of the masked robbers, who were photographed by bank surveillance cameras during the robbery; a jacket like that worn by one of the robbers; and a pair of shoes that matched prints lifted from the bank counter. In addition, two stolen pistols were found which had been taken from the same gun shop on the same night; police recovered one pistol from the [Petitioner]'s home and the other pistol from a dumpster where Moulton's stolen purse and other stolen items were found.

*State v. Robert Gamble*, No. W1999-01016-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 508, *15-16 (Tenn. Crim. App., at Jackson, June 27, 2000), *perm. app. denied* (Tenn. Jan. 2, 2001). Petitioner's convictions and sentences were affirmed. *Id.* at *23. After Petitioner's Application for Permission to Appeal to the Tennessee Supreme Court was denied, Petitioner filed a Petition for Post Conviction Relief, arguing that his trial and appellate counsel failed to render the reasonably effective assistance of counsel mandated by the Sixth and Fourteenth Amendments and that he was deprived of his right to a fair trial and due process.

At the hearing on the petition, the court heard testimony from only two witnesses: Petitioner and Petitioner's trial counsel. Petitioner testified that during the two years counsel served as his trial attorney, she visited him four or five times in jail. During these visits counsel relayed at least three negotiated plea offers to Petitioner, which would have allowed Petitioner to serve twelve, ten, or eight years. They discussed Petitioner's status as a career offender and that he could receive more than sixty years' imprisonment if he went to trial. Petitioner testified that he refused the plea offers because, although he was willing to plead guilty to fraudulent use of a credit card, he did not want to plead guilty to the aggravated robbery charges. Petitioner testified that he gave counsel the names,

addresses and phone numbers of five potential witnesses: Carl Rickman, Tiffany Rickman, Jackie Brown, Christine Brown, and Joy Rickman. Petitioner explained that Carl and Tiffany Rickman owned one of the residences where items were found which linked Petitioner to the robbery, but that counsel did not contact them. Petitioner testified that counsel did contact Jackie and Christine Brown, who owned the other residence where police found items linking Petitioner to the robbery, but that she did not call them to testify at trial. Petitioner hoped that these homeowners were willing to testify that the items found at these residences did not belong to Petitioner and that Petitioner did not "stay" there. According to Petitioner's testimony, the fifth potential witness, Joy Rickman, who was also pictured in the photographs showing Petitioner using the stolen ATM card, could have provided an alibi for Petitioner regarding the aggravated robbery. However, counsel did not call this witness to testify at trial. Petitioner testified that when he was arrested, he was wearing a pair of gloves which had a red stain, which was allegedly red dye from the bank's dye pack. Petitioner asked counsel to have the stain tested, but she did not. Petitioner also asked counsel to enlist the assistance of an expert to examine and analyze the shoe print found on the crime scene, but she did not.

Petitioner's counsel testified that she spoke with Petitioner approximately twelve times prior to his trial. During those conversations, she advised him of his status as a career offender and his potential to receive a punishment of up to seventy-two years. She testified that she personally examined each piece of potential evidence against Petitioner, all of which were contained in five boxes, and discussed the potential significance of each piece of evidence with investigators. Counsel then discussed all of the evidence with Petitioner. In preparation for cross-examination relating to the shoe print, counsel read a book on shoe print analysis and interviewed at length the T.B.I. technician who had tested the shoe prints in the T.B.I. crime lab. Counsel testified that she had attempted to contact all of the names Petitioner had given her as potential witnesses. Several subpoenas were filed for trial, and she personally went to the homes of those for whom she had an address. She did not have an address for several people and believed some may have lived out of state. For this reason, she was unable to contact Carl and Tiffany Rickman. She was able to locate and speak with Jackie and Christine Brown. However, she chose not to call either witness to testify because both witnesses were impeachable and had information that was detrimental to Petitioner. Her file reflected that she discussed the decision not to call these witnesses with Petitioner. On cross-examination, counsel explained why she did not have the stain on the glove tested:

> I knew at that point that this was a strong circumstantial evidence case against Mr. Gamble. And I knew that if I had asked to have the glove tested, that if it came back that it was red dye, then that's just one more piece of crucial evidence against him. I also knew at that point that the state had not tested it and they could not say what it was. So it was a judgment call, my judgment call that let's leave well enough alone and I can get up and argue to the jury, 'Hey this could be Kool-aid[.]'

Counsel also stated during cross-examination that when discussing plea offers, Petitioner was willing to serve eight or nine years if the charge could be reduced from aggravated robbery to simple robbery. However, the prosecutor was not willing to reduce the offense to simple robbery.

The trial court denied Petitioner's petition for post-conviction relief. Petitioner appealed only his claim that he received ineffective assistance of counsel at his trial. Specifically, Petitioner claims that his attorney failed to (1) call certain witnesses to testify in his defense; (2) have the red stain on Petitioner's glove tested; and (3) explain during pre-trial negotiations that Petitioner could plead guilty and maintain his innocence by way of an *Alford* plea.

## II. Analysis

The trial judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the trial judge. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). Questions concerning the credibility of witnesses and the weight and value to be given to their testimony are resolved by the trial court, not this court. *Burns*, 6 S.W.3d at 461. The burden of establishing that the evidence preponderates otherwise is on petitioner. *Henley*, 960 S.W.2d at 579. However, the trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. S.W.2d 674 (1984). The Tennessee Supreme Court has applied the *Strickland* standard to the right to counsel under Article I, Section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n. 2 (Tenn. 1989).

In *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), our Supreme Court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. Further, the Court stated that the range of competence was to be measured by the duties and criteria set forth in *Beasley v. United States*, 491 F.S.W.2d 687 (6th Cir. 1974), and *United States v. DeCoster*, 487 F.S.W.2d 1197 (D.C. Cir. 1973). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; s*ee Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

Petitioner claims that counsel was ineffective for failing to interview and present certain witnesses at his trial. However, none of these witnesses testified at the post-conviction hearing. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also Scott v. State*, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness or call the witness to the stand resulted in the denial of critical evidence which caused the petitioner prejudice. *Black*, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness' testimony might have been if introduced by counsel. *Id.* As such, Petitioner failed to establish that he was prejudiced.

Next, Petitioner argues that his trial counsel was ineffective for failing to have the glove tested to see whether the glove's red stain was in fact dye from a dye bomb that exploded in the money taken during the bank robbery. The trial court found:

> Counsel testified that she did not test the dye-stained glove because of her fear that it would in fact come back as dye, preferring instead to argue that the stain could be something else. Counsel's choices as to the . . . dye-stained glove were informed and reasonable, and simply because the evidence led to an unfavorable outcome does not demonstrate deficient performance.

We agree that counsel's decision not to have the red stain tested was a strategic and tactical choice, and one which we will not second-guess. *See State v. Martin*, 627 S.W.2d 139, 142 ("This, too, is a matter of strategy and tactics upon which we will not attempt to "second guess" counsel."); *see also Strickland*, 466 U.S. at 690. Petitioner has failed to show that counsel's strategic decision to not test the glove was conduct falling below the range of competence demanded of attorneys in criminal cases.

Finally, Petitioner claims that his counsel failed to inform him that he could have entered a guilty plea while simultaneously maintaining his innocence by way of an "Alford" plea. *See North Carolina v. Alford*, 400 U.S. 25 (1970). The post-conviction court held:

> Petitioner claims that counsel failed to advise him that he could have accepted the State's offer of an eight-year sentence and entered a guilty plea to avoid a 66-year sentence while simultaneously maintaining his innocence. However, according to counsel, Petitioner was advised of the offer, but would have accepted it only if the

State would reduce the aggravated robbery charge to simple robbery, which the State was never willing to do.

The record demonstrates that the State made several plea offers, which trial counsel discussed with Petitioner, but that he refused all of them and decided instead to exercise his right to trial. He made this decision after he discussed with his counsel all of the potential evidence that could be used against him and the possibility of receiving a sentence of more than sixty-six years if he was convicted. Petitioner testified that counsel did not explain an *Alford* plea to him. Although trial counsel testified that he could not specifically recall talking about the possibility of an *Alford* plea with Petitioner, she stated that "in this situation that sounds like something I would have done, where his exposure was so great and I had seen the evidence." Regardless, there is no evidence in the record indicating that Petitioner would have entered a plea and waived his right to trial even if his trial counsel had informed him of his option to make this type of plea. Instead, Petitioner was clear in his testimony that while he would have been willing to plead guilty to fraudulent use of a credit card because of the ATM photographs showing him using the stolen credit card, he was unwilling to plead guilty to aggravated robbery because no eyewitnesses could identify him as one of the two bank robbers. When explaining his decision to go to trial, Petitioner testified, "I made the decision, because I hadn't committed no robbery. I mean, again, nobody said I committed a robbery, you understand. So that was the decision I made from that. I mean, I hadn't committed a robbery, so I wasn't going to plead guilty to a robbery I hadn't committed." At no time during Petitioner's testimony did he state that he would have been willing to waive his right to trial. As such, Petitioner has failed to demonstrate by clear and convincing evidence that the outcome of the proceedings would have been different.

## CONCLUSION

For the foregoing reasons, we hold that the trial court properly denied Petitioner's petition for post-conviction relief. The decision of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE